OPINION
{¶ 1} Defendant, Thomas Phillips, appeals from his convictionfor Theft in violation of R.C. 2913.02, a felony of the fifthdegree. Defendant was sentenced to serve a term of ten monthsimprisonment on his conviction.
 {¶ 2} Phillips' offense arose from his theft of checks from anauto dealership in Clark County. He subsequently negotiated someof the checks in Montgomery County, having signed his own name tothem.
 {¶ 3} Phillips was incarcerated in the Greene County jail onunrelated charges when, on August 29, 2002, he was interviewed byKettering Police Detective Michael L. Winters, who wasinvestigating negotiation of at least three of the forged checksat a Meijers store in Kettering. After acknowledging hisMiranda rights, Phillips gave oral and written statementsadmitting that he had stolen the checks and later negotiatedthem.
 {¶ 4} While Phillips was yet in the Greene County jail on theunrelated charges, on September 4, 2002, Clark County authoritiesplaced a "holder" on his release arising from his alleged theftof the checks in Clark County.
 {¶ 5} On September 19, 2002, Phillips was convicted on theunrelated Greene County charges. He was transported to the ClarkCounty jail on that same date.
 {¶ 6} On September 30, 2002, an indictment was filed in ClarkCounty charging Phillips with theft in violation of R.C. 2913.02.The property allegedly stolen was blank checks. Per paragraph(B)(2) of that section and R.C. 2913.71(B), that fact elevatesthe offense from a misdemeanor to a fifth degree felony.
 {¶ 7} On October 2, 2002, while Phillips was incarcerated inthe Clark County jail, the Ohio Adult Parole Authority placed aparole violation detainer on Phillips. The basis of the allegedviolation was the felony theft charge on which he'd beenindicted.
 {¶ 8} Counsel from the office of the Clark County PublicDefender was appointed to represent Phillips. On October 29,2002, another attorney from that office appeared at a pretrialconference and moved for a continuance of Phillips' trial date,which the court had previously set for November 6, 2002.
 {¶ 9} The trial court granted the motion for continuance onthe date it was made, but the court's written order set no newtrial date. Subsequently, a form of memorandum, neither signed bythe judge to whom the case was assigned nor journalized, wasfiled, setting a new trial date of January 2, 2003.[1]
 {¶ 10} On January 2, 2003, Phillips filed two written motions.One was a motion to suppress his statements to Kettering PoliceDetective Winters. That motion was filed on Phillips' behalf byhis attorney. The other was a motion to dismiss, alleging thatPhillips' statutory speedy trial rights had been violated.Phillips prepared and signed that motion pro se.
 {¶ 11} The motion to suppress argued that the incriminatingstatements Phillips made to Detective Winters were procured onfalse promises of leniency; specifically, that Phillips would becharged with theft as a misdemeanor instead of as a felony if heconfessed.
 {¶ 12} The court heard evidence on the motion to suppress onthe day it was filed. The court found that though DetectiveWinters had told Phillips that misdemeanor charges would be filedif he made a statement, the promise was limited to any chargethat might be filed in Kettering and was not binding on ClarkCounty authorities. On that basis, the court overruled themotion.
 {¶ 13} The motion to dismiss was heard and decided on January29, 2003. The court held that because Phillips was not entitledto the triple-count benefit of R.C. 2945.71(E) with respect tothe time from October 2, 2002, when the APA detainer was fileduntil his motion was filed on January 2, 2003, the total time ofhis incarceration for speedy trial purposes was well short of thetwo hundred and seventy days by which the State must bring adefendant to trial. R.C. 2945.71(C)(2). The court denied themotion to dismiss on that basis.
 {¶ 14} Phillips entered a plea of no contest to the felonytheft charge after his motion to dismiss was overruled. He fileda timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR {¶ 15} "The court erred and abused its discretion when itdenied the appellant's motion to suppress as the statement wasnot voluntary having been given in return for false promises."
 {¶ 16} The trial court, after hearing the testimony of bothDetective Winters and Defendant, found that "the detectiveindicated that by making this statement a misdemeanor chargewould result in Kettering which is his jurisdiction, the City ofKettering, that he would proceed with a misdemeanor." (T. 47). Wehave reviewed the entire record, and we find that the trialcourt's finding is supported by competent, credible evidence.Therefore, we are bound by it. C.E. Morris Co. v. Foley Const.Co. (1978), 54 Ohio St.2d 279; Cox v. Stolle Corp (Mont.1990), 56 Ohio App.3d 79.
 {¶ 17} Notwithstanding its finding, the trial court held thatDefendant's statements to Detective Winters were voluntary andnot coerced because the promise the detective made did not extendto the felony charge that was filed in Clark County, because theDetective neither mentioned Clark County nor did he have theauthority to bind Clark County.
 {¶ 18} In State v. Petitjean (2000), 140 Ohio App.3d 517, weexplained that, even when Miranda warnings are given, adefendant's confession is involuntary and therefore procured inviolation of his Fifth Amendment right "if on the totality of thecircumstances the `defendant's will was overborne' by thecircumstances surrounding the giving of a confession." Id., atp. 526, quoting Dickerson v. United States (2000),530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405. Among those circumstancesare those that were involved in State v. Arrington (1984),14 Ohio App.3d 111, wherein the court held:
 {¶ 19} "Where an accused's decision to speak was motivated bypolice officers' statements constituting `direct or indirectpromises' of leniency or benefit and other representationsregarding the possibility of probation which were misstatementsof the law, his incriminating statements, not being freelyself-determined, were improperly induced, involuntary andinadmissible as a matter of law." Id. at syllabus.
 {¶ 20} In Arrington, a defendant who was indicted foraggravated murder was told by officers that he might receive asentence of probation if he confessed, and that if you "talk tous . . . you don't have to worry about no additional charges."Id. at 113. Those promises of a benefit were held to haverendered his resulting confession involuntary. We made the samepoint in Petitjean, and prior to that in State v. Hopfer(1996), 112 Ohio App.3d 521, wherein we held:
 {¶ 21} "Promises of leniency by the police, such as probationupon conviction, are improper and render an ensuing confessioninvoluntary. * * * However, `admonitions to tell the truthdirected at a suspect by police officers are not coercive innature.' Id. at 547-548, citing State v. Wiles (1991),59 Ohio St.3d 71, and State v. Cooey (1989), 46 Ohio St.3d 20."
 {¶ 22} Petitjean and Arrington both relied on therationale of a California case, People v. Flores (1983),144 Cal.App.3d 492, 192 Cal.Rptr. 772, which drew the followingdistinction between two kinds of promises:
 {¶ 23} "`When the benefit pointed out by the police to asuspect is merely that which flows naturally from a truthful andhonest course of conduct, we can perceive nothing improper insuch police activity. On the other hand, if in addition to theforegoing benefit, or in the place thereof, the defendant isgiven to understand that he might reasonably expect benefits inthe nature of more lenient treatment at the hands of the police,prosecution or court in consideration of making a statement, evena truthful one, such motivation is deemed to render the statementinvoluntary and inadmissible. The offer or promise of suchbenefit need not be expressed, but may be implied from equivocallanguage not otherwise made clear.' (Emphasis added.)" (QuotingPeople v. Hill (1967), 66 Cal.2d 536, 549, 58 Cal.Rptr. 340[348], 426 P.2d 908, [916].) Arrington, supra, at 115.
 {¶ 24} Both Detective Winters and Defendant in their testimonyon the motion to suppress made one thing very clear; theDefendant's primary and overriding concern was to avoid beingcharged with a felony. He wished to be charged with a misdemeanorinstead. His concern was that if he was charged with a felony hisprior theft convictions would then expose him to more onerouspunishments. The trial court's finding that Detective Winterspromised Defendant that if he confessed a misdemeanor chargewould be filed in Kettering, in Montgomery County, was given byhim and accepted by Defendant on the basis of that concern.
 {¶ 25} The difficulty is in the court's further findings thatthe promise didn't preclude a felony charge filed in Clark Countyarising out of the conduct to which Defendant confessed. Thatfinding necessarily posits the existence of an unexpressedreservation or condition, which by its nature renders the(otherwise unambiguous) promise equivocal, and an equivocalpromise is not a basis for a knowing, intelligent, and voluntarywaiver of the Fifth Amendment right. The finding also posits thatthe force of the promise, while it might bind authorities inMontgomery County, cannot bind authorities in Clark County. Thatview ignores the fact that the promise is binding on the State ofOhio with respect to any charges which are filed in its name,irrespective of what representative of the State files them or inwhat court of the State they are filed.
 {¶ 26} The trial court erred when it found that,notwithstanding the promise that Detective Winters made,Defendant's confession could be used against him in theproceedings before the court on a felony charge involving theconduct to which Defendant confessed. That application rendersDefendant's waiver of his Fifth Amendment right less thanknowing, intelligent, and voluntary in this case. The trial courttherefore erred when it overruled Defendant's motion to suppressevidence.
 {¶ 27} The first assignment of error is sustained.
 THIRD ASSIGNMENT OF ERROR {¶ 28} "The appellant was denied due process of law when hisliberty was restricted without timely hearing or trial."
 {¶ 29} Defendant attacks the validity of the APA detainer,arguing that it issued contrary to regulations governing issuanceof such detainers by the department of rehabilitation andcorrection published in the Ohio Administrative Code. See O.A.C.5120:1-1-31(F). If the detainer was invalid, it might notconstitute an independent basis for incarceration that denies anaccused the benefit of the triple-count provisions of R.C.2945.71(E). However, Defendant failed to raise this particularissue by way of a timely objection filed in the trial court.Therefore, it is waived for purposes of appeal. Crim.R. 12(H).
 {¶ 30} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 31} "The appellant was denied his constitutional andstatutory rights to speedy trial when he was held on detainer foralleged fifth degree felony charges without a prompt paroleviolation hearing as mandated by ohio law and regulations."
 {¶ 32} Defendant argues that, because the APA detainer wasinvalid for reasons argued under the third assignment of error,the trial court erred when it took account of the detainer todeny him the triple-count benefit of R.C. 2945.71(E) for the timehe was incarcerated after the detainer was filed, and then foundthat his speedy trial rights were not violated. However,Defendant's motion to dismiss for violation of his speedy trialrights raised no issue concerning the validity of the APAdetainer. Again, because this issue was not raised, the defenseor objection is waived. Crim.R. 12(H).
 {¶ 33} The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 34} "The trial court erred, abused its discretion, and heldagainst the manifest weight of the evidence when it did notcredit appellant with the time served from his detention ingreene county prior to his transfer to clark county."
 {¶ 35} The trial court made no mention of the fifteen daysDefendant was subject to a Clark County holder on these chargeswhile he was incarcerated in the Greene County jail. Defendant isentitled to the credit for that time for speedy trial purposes,but as straight time and not triple-time per R.C. 2945.71(E).However, whether those days are accounted as straight-time ortriple-time, their addition to the time he was incarcerated inClark County does not produce a statutory speedy trial violation,at least so long as the trial court was correct when it foundthat Defendant was not entitled to triple-count for the time hewas incarcerated after the APA detainer was filed. Defendant doesnot attack that aspect of the trial court's ruling, except withrespect to the validity of the APA detainer. Any error in thatregard has been waived.
 {¶ 36} The fifth assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 37} "The appellant was denied effective assistance ofcounsel and therefore constitutional due process of law."
 {¶ 38} Counsel's performance will not be deemed ineffectiveunless and until counsel's performance is proved to have fallenbelow an objective standard of reasonable representation and, inaddition, prejudice arises from counsel's performance.Strickland v. Washington (1984), 466 U.S. 668. To show that adefendant has been prejudiced by counsel's deficient performance,the defendant must demonstrate that, were it not for counsel'serrors, the result of the trial would have been different. Id.,State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 39} Defendant argues that his appointed counsel failed totake action on his behalf until long after his indictment, andthat this inattention prompted another attorney from the publicdefender's office to request a continuance of his trial date,contrary to Defendant's express instructions to not do anythingto compromise his speedy trial rights. Defendant further arguesthat when he filed his motion to dismiss for violation of hisspeedy trial rights he was required to represent himself, for allpractical purposes, because his attorney had moved for leave towithdraw as Defendant's attorney. Finally, Defendant argues thathis attorney failed to attack the validity of the APA detainer ina habeas corpus proceeding.
 {¶ 40} Defendant's contentions concerning his attorney'sfailure to act on his behalf relate to the prejudice to hisspeedy trial rights resulting from the continuance that wassought. However, it is not unusual that a busy attorney must seeka continuance because of the press of other representations. And,public defender attorneys are notoriously overburdened.
 {¶ 41} The fact that an attorney seeks a continuance, eventhough it may toll a client's speedy trial time, doesn'tnecessarily portray a violation of counsel's duty ofrepresentation, even when, as Defendant claims, requesting acontinuance was contrary to the client's instructions. Theclient's preferred defense strategies do not necessarily governhis counsel's decisions.
 {¶ 42} Neither do we find that Defendant was required torepresent himself because his appointed attorney requested leaveto withdraw. That request was apparently prompted by Defendant'scontentions in his pro se motion to dismiss that his attorney wasconstitutionally ineffective for much the same reason he argueshere. However, counsel appeared and prosecuted the motion todismiss on Defendant's speedy trial time claims. After that, thecourt denied counsel's motion to withdraw. Again, we find noprejudice.
 {¶ 43} Finally, with regard to counsel's failure to attack thevalidity of the APA detainer in a habeas corpus proceeding, wecannot find on this record that such a proceeding would havesucceeded.
 {¶ 44} The State offered evidence that the APA detainer wasreceived by the Clark County jail by fax transmission. Thatsuggests that the detainer was "immediately filed" uponDefendant's indictment on the fifth degree felony, which isprohibited by O.A.C. 5120:1-1-31(F). Indeed, the retainer wasfiled two days after the indictment.
 {¶ 45} Nevertheless, the alternative procedures, whereby thedetainer may be filed by the supervising parole afterconsultation with his or her unit supervisor, followed by otherinternal procedures, may have been employed. The record does notshow that it was not. Therefore, we cannot find that Defendantwas prejudiced.
 {¶ 46} The second assignment of error is overruled.
 {¶ 47} Having sustained the first assignment of error, we willreverse and vacate Defendant-Appellant's conviction and sentenceand remand the matter to the trial court for further proceedingsconsistent with this opinion
 Fain, P.J. and Brogan, J., concur.
[1] The applicable statutory speedy trial time is tolledduring "[t]he period of any continuance granted on the accused'sown motion." R.C. 2945.72(H). In this situation, the "period" isthe term between the trial date the defendant moved to continueand the new date ordered by the court. A court of record speaksonly through its journal entries, and neither an oralannouncement nor a written memorandum of intention is bindingupon the judge as an act of the court. See 23 Ohio Jurisprudence3d, Courts and Judges, Section 325. Therefore, an unsigned andunjournalized memorandum of the kind the court employed here toset a new trial date might prevent creation of the "period"contemplated by R.C. 2945.72(H). We encourage the trial court toemploy signed and journalized entries for that purpose.