[Cite as *State v. Winger*, 2017-Ohio-7660.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,

    CASE NO. 9-17-12

    v.

ASHLEE WINGER,

    O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Marion County Common Pleas Court
Trial Court No. 17-CR-0048

Judgment Affirmed

Date of Decision:  September 18, 2017


APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Nathan Witkin* for Appellee

**WILLAMOWKSI, J.**

{¶1} Plaintiff-Appellant the State of Ohio ("the State") brings this appeal from the judgment of the Court of Common Pleas of Marion County granting the motion to suppress the statements made by Defendant-Appellee Ashlee Winger ("Winger"). The State claims that the trial court's decision was not supported by competent, credible evidence and that the trial court applied the wrong legal standard. For the reasons set forth below, the judgment is affirmed.

{¶2} On February 9, 2017, the Marion County Grand Jury indicted Winger on one count of Possession of Heroin in violation of R.C. 2925.11(A)(C)(6), a felony of the fifth degree. Doc. 2. Winger entered a plea of not guilty to the charge. Doc. 8. On March 10, 2017, Winger filed a motion to suppress. Doc. 18. The State filed its response on April 3, 2017. Doc. 24. On April 4, 2017, a hearing was held on the motion to suppress. Doc. 29. At the hearing, the State presented the testimony of Officer Dylan Reese ("Reese") of the Marion Police Department.

{¶3} On January 28, 2017, Reese stopped a vehicle, in which Winger was a passenger, for making an improper turn. Tr. 4. Winger initially gave the wrong name, but later admitted her true identity. Tr. 6-8. During the stop, Reese found a pouch with needles in it between the frame of the car and the back seat on the driver's side. Tr. 10. Reese also found a book bag containing some pills which were later identified as Tramadol. Tr. 12. Winger initially denied that the pouch and the syringes were hers. Tr. 13. Reese told her that if she admitted the pouch

was hers, she would not be charged with felony possession, only a misdemeanor. Tr. 25. Reese only asked her to admit to owning the pouch, not its contents. Tr. 25. Eventually, she admitted that the pouch was hers. Tr. 24. Reese arrested her on suspicion of multiple criminal offenses. Tr. 16. When he was searching the pouch at the police station, Reese found a packet of what he suspected to be heroin that he had not previously seen.[1] Tr. 18-19. Reese admitted that he told Winger that she would only be charged with a misdemeanor to get her to admit to owning the pouch to conclusively prove that the contents of the pouch were Wingers. Tr. 24. When making the offer to Winger, Reese stated that the misdemeanor charge was in return for her admitting to being the owner of the pouch. Tr. 26 and Ex. 1. The video showed that although Reese repeatedly asked Winger if the pouch was hers, she repeatedly denied it. Ex. 1. The video did not show the actual discussion between Reese and Winger about what would happen if she admitted to owning the pouch.[2] Ex. 1.

{¶4} On April 7, 2017, the trial court denied the portion of the motion to suppress which requested that the prosecution for felony possession of heroin be dismissed pursuant to the agreement. Doc. 29. As to the portion of the motion asking that Winger's statements admitting to owning the pouch be suppressed, the

---

[1] At the hearing on the motion to suppress it was indicated that the paper did not contain heroin, but instead contained carfentanyl. Tr. 34. A supplemental indictment was filed on April 6, 2017 adding a charge of Aggravated Possession of Drugs in violation of R.C. 2925.11(A)(C)(1), a felony of the fifth degree, as well as the original charge of Possession of Heroin. Doc. 26.

[2] The discussion may have been at the beginning of the second video, but there was no audio for that portion.

trial court granted the motion. On April 10, 2017, the State filed its notice of appeal and its certification that without the admission, the proof regarding the pending charge was so weak as to destroy any reasonable possibility of an effective prosecution. Doc. 33. On appeal the State raises the following assignment of error.

**The trial court erred in granting [Winger's] motion to suppress evidence.**

{¶5} In the sole assignment of error, the State claims that the trial court erred in granting Winger's motion to suppress. To support this claim, the State makes two arguments: 1) the findings of the trial court were not supported by competent, credible evidence and 2) the trial court improperly determined that the confession was not voluntary. "An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 11.

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.** *State v. Mills* **(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.** *State v. Fanning* **(1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.** *State v. McNamara* **(1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Generally, the State may not appeal rulings in criminal prosecutions, but Crim.R.

12(K) does provide a limited right to appeal a granting of a motion to suppress. *State v. Bassham*, 94 Ohio St.3d 269, 2002-Ohio-797, 762 N.E.2d 963. The State must certify that the appeal is not taken for the purpose of delay and that the State's case is so weakened that no effective prosecution is possible. Crim.R. 12(K). If the judgment of the trial court granting the motion to suppress is affirmed, the State is barred from prosecuting the defendant for the offenses charged. Crim.R. 12(K).

*Competent Credible Evidence*

{¶6} First, the State argues that the trial court's decision was not supported by competent, credible evidence. As discussed above, an appellate court must accept the trial court's findings of facts if they are supported by competent, credible evidence. The only evidence presented at the hearing was the testimony of Reese, and the body cam videos in Exhibit 1. The trial court determined that Reese had specifically told Winger that if she acknowledged ownership of the pouch which contained the syringes, she would not be prosecuted for a felony drug offense, but only for a misdemeanor offense of possession of drug paraphernalia with respect to the contents of the pouch. Doc. 29 at 8. The actual statements of Reese to Winger were not available for review. However, Reese testified that he told Winger that if she admitted to owning the pouch, she would only be charged with the misdemeanor offense of possession of drug paraphernalia rather than a felony charge. Tr. 25. Upon cross-examination, Reese admitted that he only specifically asked about the pouch, not the needles. *Id*. Although Reese testified that he really meant the needles,

not the pouch, that is not what he communicated to Winger. His statement to Winger was about the pouch according to his own testimony.

{¶7} The trial court also found that Winger would not have acknowledged ownership without the promise of Reese. Although Winger did not testify, the video footage in Exhibit 1 shows that Winger was continuously denying owning the pouch. Even when Reese told her that she was the one with the best access to the pouch, Winger still denied the pouch was hers. Reese testified that Winger repeatedly denied ownership of the pouch until he told her that she would only be charged with a misdemeanor rather than a felony if she admitted ownership. Tr. 24-26. Winger only admitted to the ownership of the pouch after Reese had promised that she would not be charged with a felony. *Id.* Given the content of the video and the testimony of Reese, the trial court's conclusions were supported by competent, credible evidence. The fact that different conclusions could possibly be reached, as is argued by the State, does not necessarily make the trial court's determinations unreasonable. The evidence, the credibility of which is determined by the trial court, does not show that the trial court was incorrect or unreasonable in its determination. Thus, this court must accept the factual findings of the trial court.

*Voluntariness of the Admission*

{¶8} The State also argues that if the trial court's facts are supported by competent credible evidence, then the trial court misapplied the law. Upon a challenge to the admissibility of a confession, the prosecution must prove the

voluntariness of the statements by a preponderance of the evidence. *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 32. "Constitutional principles of due process preclude the use of coerced confessions as fundamentally unfair, regardless of whether the confession is true or false." *Id.* at 31. "A reviewing court must determine whether the totality of the circumstances surrounding the confession indicates that a defendant's 'will was overborne and his capacity for [self-determination] was critically impaired because of coercive police conduct.' " *State v. Hazlett*, 3d Dist. Logan No. 8-06-04, 2006-Ohio-6927, ¶ 13 quoting *State v. Otte*, 74 Ohio St.3d 555, 562, 1996-Ohio-108, 660 N.E.2d 711. The circumstances to be reviewed include many factors, such as the age, mentality, prior criminal experience of the accused, the circumstances of the interrogation, and the existence of a threat or inducement. *State v. Tussing*, 3d Dist. Logan No. 8-10-11, 2011-Ohio-1727, ¶ 33. The "test for voluntariness is whether, in light of the totality of the circumstances, the police obtained the incriminating statements by coercion or *improper inducement*." *State v. Arrington*, 14 Ohio App.3d 111, 470 N.E.2d 211 (6th Dist. 1984) (emphasis added) citing *Haynes v. Washington*, 373 U.S. 503, 513-514, 83 S.Ct. 1336, 10 L.E.d2d 513. "Consequently, a confession 'must not be extracted by any sort of threats or violence, *nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence*." *Arrington, supra* at 114.

**The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. \* \* \***

**" 'When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear.' "**

*Id.* at 115 quoting *People v. Flores*, 144 Cal.App.3d 459, 192 Cal.Rptr 772, 776-777 quoting *People v. Hill*, 66 Cal.2d 536, 549, 58 Cal.Rptr. 340, 426 P.2d 908 (1967). See also, *State v. Booher*, 54 Ohio App.3d 1, 560 N.E.2d 786 (3d Dist. 1988), *State v. Phillips*, 2d Dist. Clark No. 2003-CA-15, 2004-Ohio-4688 and *State v. Leonard*, 4th Dist. Ross No. 16CA3573, 2017-Ohio-1541. The voluntariness of a confession depends upon the absence of police overreaching rather than "free choice". *State v. Hughbanks,* 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081, ¶ 62 and *State v. Scholl*, 10th Dist. Franklin No. 12AP-309, 2012-Ohio-6233.

{¶9} Here, the State argues that the trial court erred in determining that Winger was coerced by Reese into admitting ownership. Instead, according to the State, the promise made by Reese was an offer of leniency meant to persuade or

influence, not to coerce. This court does not doubt that the promise made by Reese was intended to persuade and influence Winger into admitting ownership of the pouch and the contents. However, persuasion and influence of a suspect crosses the line into coercion when a promise is made that if a suspect confesses, he or she will face a reduced charge. *See Arrington, supra* (police told defendant that if he confessed, certain charges would not be brought and others would be dropped)*; Tussing, supra* (police told defendant that if he confessed, he would not go to jail); *State v. Wilson*, 117 Ohio App.3d 290, 690 N.E.2d 574 (1st Dist. 1996) (police told defendant that if he confessed, he would only face a theft charge, not one for aggravated robbery); and *State v. Phillips*, s*upra* (police told defendant that if he confessed he would only be charged with a misdemeanor, not a felony). As discussed above, the trial court made specific findings of fact that Winger would not have confessed to being the owner of the pouch without the promise that she would not face felony charges if she did so. The circumstances, as seen through the recording in Exhibit 1, show that until that promise was made, Winger repeatedly denied that she owned the pouch. Reese admitted in his testimony that he made the promise in order to get her to admit ownership.[3] The video showed that Winger understood the difference between a felony charge and a misdemeanor charge and wanted to avoid felony charges. Given the facts, as determined by the trial court,

---

[3] In the video Reese stated that although Winger was denying ownership of the pouch, she was still going to be charged because she was the one with the access.

we agree that Reese made a specific promise to induce Winger to confess. The trial court's determination that this inducement was sufficient to make the confession involuntary is supported by the evidence and the law. Therefore, the trial court did not err in reaching the conclusions it did. The assignment of error is overruled.

{¶10} Having found no error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Marion County is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**